424 So.2d 849 (1982)
Robert V. CARIDA, Appellant,
v.
HOLY CROSS HOSPITAL, INC., a Florida Corporation; Sister Mercy McGrady, Executive Director of Holy Cross Hospital, Inc.; Robert C. Bishop, M.D., Chief of Staff of Holy Cross Hospital, Inc.; Russell Brancato, M.D.; Zachariah P. Zachariah, M.D.; Mr. Jack Bondurant; Zachariah P. Zachariah, M.D., P.A., a Florida Corporation, Appellees.
No. 82-1084.
District Court of Appeal of Florida, Fourth District.
December 8, 1982.
Rehearing Denied January 26, 1983.
*850 David A. Hoines of David A. Hoines, P.A., Fort Lauderdale, for appellant.
James D. Clark of Fitzgerald, Taylor, Skinner, Zwicky & Michalak, Fort Lauderdale, for appellees.
BERANEK, Judge.
Plaintiff/appellant seeks review of two non-final orders, one dismissing his complaint without prejudice for lack of personal jurisdiction over a defendant, and one vacating a clerk's default as to the defendant. We reverse as to the first order but decline to consider the second order as it is a non-appealable, non-final order.
Plaintiff sued a number of defendants for defamation, tortious interference with business relationships, and civil conspiracy. The facts, as alleged in plaintiff's complaint, are as follows. On April 1, 1975, plaintiff, a cardiologist, was appointed director of the coronary care unit at Holy Cross Hospital for a period of two years. One of the clauses in his written contract stated, "In the event that a cardiac and vascular angiographic laboratory is established at Holy Cross Hospital, the Director of the Coronary Care Unit will be given first consideration for the position as Director of the lab." Subsequently, the Hospital decided to establish such a laboratory commonly known as a "cardiac cath lab." Plaintiff received numerous assurances from Sister Mercy McGrady, Executive Director of the Hospital, that she intended to appoint plaintiff as Director of the lab. On January 1, 1976, plaintiff was told by Sister McGrady to proceed with the organization and installation of the cardiac cath lab. Plaintiff did so. Furthermore, in order to regain his proficiency at performing cardiac catheterizations, plaintiff engaged in refresher training from April 20, 1976, through May 14, 1976, with Dr. Russell Brancato, a specialist in cardiology and cardiac catheterization at St. Joseph Hospital, in Patterson, New Jersey. While plaintiff was in New Jersey, Sister McGrady traveled to Cleveland, Ohio, to interview Dr. Zachariah P. Zachariah for the position of Director of the cardiac cath lab. Before he returned to Florida, plaintiff was informed by Sister McGrady that Dr. Zachariah was to be awarded the directorship of the new lab. The plaintiff told Sister McGrady and Dr. Bishop, Chief of the Medical Staff of Holy Cross Hospital, that during his refresher training with Dr. Brancato, he had participated in approximately 55 cases, 40 of which involved the manual manipulation of the catheter while inside the patient's body.
It was not until September, 1976, that plaintiff first learned of the publication of false statements about his medical training and qualifications to conduct cardiac catheterization, as well as false statements and innuendo that plaintiff had misrepresented his participation and experience in the procedure of cardiac catheterization while training with Dr. Brancato. The complaint specifically alleged that Dr. Brancato falsely told Dr. Bishop and Dr. Zachariah that plaintiff had not touched a catheter while plaintiff was training with Dr. Brancato, and further that plaintiff was not qualified to perform cardiac catheterizations. These statements were republished by Dr. Bishop, Dr. Zachariah, and Sister McGrady, among others. Plaintiff asserts he was damaged in that he was made to appear unqualified and incompetent, as well as personally dishonest. Obviously we do not, at this point, pass upon the legal sufficiency of the cause of action or all of the alleged damages resulting therefrom. We are concerned only with jurisdiction.
All the defendants named in the action are residents of Florida, with the exception Dr. Brancato. Plaintiff served him with his amended complaint on January 26, 1982, in *851 New Jersey. Dr. Brancato filed no response, and a default was entered on March 3, 1982. On March 24, 1982, Dr. Brancato filed his motion to dismiss the amended complaint and a motion to set aside the default. The trial court granted both motions and plaintiff appeals.
As previously stated, we consider only the trial court's granting of the motion to dismiss which was based solely upon lack of personal jurisdiction. Appellant contends that Dr. Brancato is subject to the jurisdiction of the Florida courts through this State's Long-Arm Statute, Section 48.193(1)(b), Florida Statutes (1981) which reads in pertinent part:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits that person and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following:
... .
(b) Commits a tortious act within the State.
Plaintiff asserts that defendant Brancato committed a tortious act in Florida by virtue of his libelous telephone conversations. Defendant urges us to hold that even if a tort were committed in the State of Florida, the party over whom jurisdiction is asserted must have had sufficient minimum contact with Florida to satisfy any due process requirements. In the case of Godfrey v. Neumann, 373 So.2d 920 (Fla. 1979), the Supreme Court held that the commission of a tort in Florida by a non-resident establishes sufficient minimum contacts with Florida to justify the acquisition of in personam jurisdiction over him. Although that case dealt with a tort which was committed when defendant was on vacation in Florida, the Court's holding made no distinction between a physical tort and a tort committed by sending false statements into the State.
More recently, the Supreme Court has looked at minimum contacts under Section 48.193(1)(f)(2) dealing with products manufactured elsewhere but consumed within this State. In the case of Ford Motor Company v. Atwood Vacuum Machine Company, 392 So.2d 1305 (Fla. 1981), plaintiffs brought a suit for damages against Ford Motor Company and a Florida Ford dealer for injuries allegedly caused by the faulty operation of a rear door hinge on a Ford station wagon. Ford filed a third party complaint against Atwood, an Illinois corporation, who manufactured the door hinge assemblies and supplied them to Ford. The complaint alleged that Atwood knew the door hinge assemblies were to be incorporated into automobiles manufactured by Ford and some of the automobiles would be shipped to Florida and sold. Atwood contested jurisdiction and was dismissed as a party. The Supreme Court reversed stating: "The fact that a non-resident manufactures a component part outside the State and takes no part in the sale, distribution, or marketing of the finished product in the State is no basis for a limitation of jurisdiction." Shortly after the Ford decision, this Court issued an opinion in the case of Jacobson Manufacturing Company v. Cross Manufacturing Company, 396 So.2d 825 (Fla. 4th DCA 1981). In that case, Cross Manufacturing, a Kansas manufacturer of hydraulic component parts, sold T-swivels to Hydra Hose, Inc., a Kansas distributor. The T-swivels were sold in Kansas by Hydra Hose to Jacobson Manufacturing, who incorporated the T-swivels into lawn sweepers manufactured in Kansas. One of these lawn sweepers was brought into Florida, malfunctioned, and injured an employee of its purchaser, who then filed suit against Jacobson. Jacobson filed a third party complaint against Cross and Hydra Hose who both moved to dismiss for lack of jurisdiction under the Long Arm Statute. This court held that, based on Ford, the allegations were sufficient to invoke jurisdiction. Having found jurisdiction under the facts of Jacobson it would hardly be fair for us to hold that a person committing the alleged tort of defamation by virtue of phone calls into this State can escape the jurisdiction of our courts.
*852 As to minimum contacts, we are not dealing here with one isolated conversation in a vacuum. Defendant spoke with Drs. Bishop, Zachariah, and Sones sometime after plaintiff completed his refresher training in New Jersey. This series of conversations obviously put defendant on notice that plaintiff's abilities and his performance in the refresher training were of concern to an increasing number of medical personnel in the State of Florida. Defendant had to know that his allegedly false statements concerning plaintiff's abilities and his total failure to adequately perform in his refresher training were adversely affecting plaintiff in his professional medical endeavors in Florida. We thus conclude that the requirement of minimum contact has been satisfied.
REVERSED.
LETTS, C.J., and ANSTEAD, J., concur.