**Sam W. GROOME, Plaintiff,**

v.

**Ronald F. FEYH, Rick L. Fugitt, and N. Robert Cann, Defendants.**

**No. 86–8195–Civ.**

United States District Court,
S.D. Florida, N.D.

Dec. 30, 1986.

Steven A. Mayans, Moyle, Flanigan, Katz, Fitzgerald & Sheehan, P.A., West Palm Beach, Fla., for plaintiff.

Nathan E. Nason, Nason, Gilda, Yeager & Gerson, P.A., West Palm Beach, Fla., for defendants.

## ORDER AND OPINION

GONZALEZ, District Judge.

THIS CAUSE has come before the court upon the motion to dismiss, for lack of *in personam* jurisdiction, filed by the defendants, Ronald E. Feyh, Rick L. Fugitt, and N. Robert Cann (defendants).

### FACTS

The plaintiff, Sam W. Groome (plaintiff) has sued the defendants for breach of contract and for fraud. The plaintiff alleges that the defendants contacted the plaintiff in Florida by telephone to solicit the plaintiff's investment in a Missouri corporation named Corporate Coachworks, Corporation (corporation). The plaintiff further alleges that "following numerous conversations," the plaintiff and the defendants entered into a contract whereby, *inter alia*, the plaintiff would purchase thirty percent equity ownership and fifty percent voting ownership in the corporation. Plaintiff's Complaint at 2. The plaintiff claims that the defendants "expressly represented" that the defendants had purchased the outstanding shares of the corporation once allegedly owned by one Charles Luna. The plaintiff also claims that all outstanding shares in the corporation were owned by the various defendants, with defendant Cann owning fifty percent of the voting shares and the defendants, Feyh and Fugitt, owning the remaining fifty percent in partnership. *Id.*

The plaintiff alleges that he performed all the conditions and obligations under the contract and that the defendants breached the contract by failing to sell all outstanding shares in the corporation to the plaintiff. The plaintiff asserts that the defendants misrepresented to the plaintiff that the defendants owned all outstanding shares in the corporation when, in fact, the defendants had not purchased the shares owned by Luna.

### MOTION TO DISMISS

The defendants have moved for dismissal on the ground that this court lacks *in personam* jurisdiction over the defendants. Subject matter jurisdiction for this suit is based on diversity of citizenship. In order to ascertain whether personal jurisdiction exists a federal court sitting in a

diversity case must generally look "first at the applicable state statute [on long-arm jurisdiction] and then at federal due process requirements." *Pesaplastic C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1521 (11th Cir.1985). Federal courts are "bound by state law concerning amenability of a person or a corporation to suit, so long as state law does not exceed the limitations imposed by the Due Process Clause of the Fourteenth Amendment." *Washington v. Norton Manufacturing, Inc.*, 588 F.2d 441, 444 (5th Cir.1979), *cert. denied*, 442 U.S. 942, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979).

The plaintiff alleges that this court may exercise long-arm jurisdiction pursuant to any of three[1] particular subsections of the relevant Florida statute. The applicable Florida statute provides in pertinent part:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in or carrying on a business or business venture in this state or having an office or agency in this state.

(b) Committing a tortious act within this state.

.    .    .    .    .

(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

Fla.Stat. § 48.193 (West Supp.1986).

## I. FLORIDA LONG–ARM JURISDICTION

### a) *Committing a tortious act within Florida*

▮ The plaintiff asserts that he was defrauded by various representations made by the defendants. These representations are alleged to have occurred during telephone conversations between the plaintiff, in Florida and the defendants, in Missouri.

As support for his contention that Florida may exercise long-arm jurisdiction over the defendants under the tortious act section of the Florida statute, the plaintiff cites the case of *Carida v. Holy Cross Hospital*, 424 So.2d 849 (Fla.Dist.Ct.App. 1982). The tort alleged by the plaintiff in *Carida*, was defamation. One of the elements comprising the tort of defamation is the act of publication. *Advantage Personnel Agency, Inc. v. Hicks & Grayson*, 447 So.2d 330, 331 (Fla.Dist.Ct.App.1984). In *Carida*, the publication of the defaming statement occurred in Florida, during the course of a telephone conversation between an out-of-state defendant and a party in Florida. *Carida*, 424 So.2d at 851.

In the instant case the plaintiff alleges that the defendants engaged in certain fraudulent acts. In an action for fraud the requisite acts are "a false statement regarding a material fact, knowledge of its falsity, the intention that the lie be acted upon, and injury to the other party caused by his reasonable reliance upon the representation." *A.S.J. Drugs v. Berkowitz*, 459 So.2d 348, 349 (Fla.Dist.Ct.App.1984). As alleged by the plaintiff, the defendants solicited his investment in the corporation, and this solicitation occurred in Florida by means of an interstate telephone call placed by the defendants. In his affidavit, the plaintiff alleges that the misrepresentation, concerning the defendants' abilities to purchase the shares of Mr. Luna, occurred during telephone conversations between the defendant, Fugitt in Missouri, and the plaintiff in Florida. The remaining defendants are not alleged to have taken part in the negotiations conducted over the telephone.

The plaintiff has failed to allege that the defendants, Feyh and Cann, committed any

---

1. In addition to subsections (1)(a), (1)(b), (1)(g), the defendants also referred to subsection (1)(f) of section 48.193. The plaintiff did not include subsection (1)(f) in his response to the defend-ants' motion to dismiss, nor does the court find that this subsection, which deals with products liability situations, supports the exercise of *in personam* jurisdiction as to the defendants.

tortious act in Florida, therefore, the court finds that it may exercise long-arm jurisdiction, under the tortious act section of the statute, as to defendants Feyh and Cann. The court finds, however, under the reasoning employed in *Carida,* that long-arm jurisdiction may extend to the actions of the defendant Fugitt, as a matter of state law, pursuant to section 48.193(1)(b), the tortious act section of the long-arm jurisdiction statute.

b) *Breaching a contract in Florida by failing to perform acts required by the contract to be performed in Florida*

■ The plaintiff argues that long-arm jurisdiction may be asserted over the defendants despite the fact that the written contract allegedly entered into by the parties contains no requirement that any act, under the contract, be performed in Florida. The plaintiff bases this conclusion on two grounds: alleged existence of a separate oral agreement, and a Florida law presumption.

The plaintiff asserts, in his response to the motion to dismiss, that "the parties orally agreed that the stock certificates should be mailed to the plaintiff in Florida." Plaintiff's Memorandum in Opposition at 15. The plaintiff cites his affidavit as proof of the existence of this alleged agreement. *Id.* The court has examined the plaintiff's affidavit, but does not find any reference to an additional oral agreement. Paragraph sixteen of the plaintiff's affidavit merely states: "[a]s required under the contract, I forwarded payment and a certificate of deposit for the shares from Florida to the defendants in Missouri." In paragraph seventeen of his affidavit, the plaintiff states that the defendants "breached the Contract by failing to forward to [the plaintiff] in Florida the stock certificates...." All prior references in the plaintiff's affidavit to "the Contract" were to the written memorandum allegedly entered into by the parties, not to an additional separate oral agreement. As the plaintiff has conceded in his memorandum

in opposition to the defendants' motion, the written agreement is silent as to delivery.

The plaintiff, however, argues that even in the absence of such oral agreement, a presumption arises that the defendants were required to mail the stock certificates to the plaintiff in Florida. The plaintiff suggests that the Florida presumption that, absent agreement to the contrary, the debtor shall repay the creditor at the creditor's place of business, is analogous to the tendering of share certificates. *See Engineered Storage Systems, Inc. v. National Partitions,* 415 So.2d 114 (Fla.Dist.Ct.App. 1982); *see also Madax International Corp. v. Delcher Intercontinental Moving Services, Inc.,* 342 So.2d 1082, 1084 (Fla. Dist.Ct.App.1977).

The court does not find the situations to be analogous. Over time the appropriate and usual place of payment of a debt has come to be where the creditor resides. The plaintiff, however, has not cited any authority which would warrant application of the common law doctrine regarding payment of a debt to the transfer of share certificates. The court finds, therefore, that *in personam* jurisdiction cannot be based upon the section of the Florida long-arm statute which deals with the failure of the contracting party to do some act required under the contract to be performed in Florida.

c) *Operating, conducting, engaging in or carrying on a business or business venture in Florida*

■ Alternatively, the plaintiff maintains that the defendants engaged in conduct sufficient to subject the defendants to Florida long-arm jurisdiction under the "doing business" section of the Florida long-arm statute. Specifically, the plaintiff argues that the defendants engaged in or conducted a business venture when the defendants allegedly solicited the plaintiff's investment and active participation in the corporation. Additionally, the plaintiff relies on the fact that the corporation, apart from the individual defendants, sells its product in Florida.

In seeking dismissal of this action, the defendants rely primarily on the Florida case of *Compuguide Corp. v. Sachs*, 259 So.2d 513 (Fla.Dist.Ct.App.1972), in which the court found in substantial activity to warrant exercise of personal jurisdiction under the "doing business" or business venture section of the Florida statute. In *Compuguide*, the plaintiff sought specific performance of a contract with an out-of-state corporation which was obligated to purchase stock in a Florida corporation. The contract was negotiated partly in Florida, and partly in New Jersey, but the written agreement was entered into in New Jersey. The written agreement included a provision that the out-of-state corporation employ two of the plaintiffs. In addition, the out-of-state corporation utilized Florida attorneys and accountants in preparation for the uncompleted closing on the sale of the stock. The court, in *Compuguide*, found these contacts insufficient to invoke the provisions of Florida Statute § 48.-181(1) (service upon a nonresident engaged in business in Florida). The operative language of section 48.181(1) has been found to be identical to the language of section 48.193(1)(a), the statute at issue here. Cases interpreting section 48.181(1) have been deemed to be applicable to section 48.193(1)(a). *Citizens State Bank v. Winters Government Securities Corp.*, 361 So.2d 760, 763 (Fla.Dist.Ct.App.1978).

The plaintiff, in opposition to dismissal, emphasizes the fact that the corporation is engaged in a general course of business in Florida. The plaintiff asserts, in his supplemental affidavit, that the corporation sells limousines in Florida and that these sales have generated approximately $500,-000.00 in revenue for the corporation. Plaintiff's Supplemental Affidavit at 2.

Courts construing the "doing business" section of the Florida long-arm statute have required some nexus or connection, known as connexity, between the business carried on in Florida and the cause of action alleged. *Polskie Linie Oceaniczne v. Seasafe Transport A.S.*, 795 F.2d 968 (11th Cir.1986). Here, the only allegation is that the corporation is engaged in business in Florida, there is no connection alleged to have existed between the business conducted in Florida, and the harm which the plaintiff claims he has suffered.

A recent change in section 48.193, the Florida long-arm statute at issue in this case, casts some doubt as to whether connexity is still a requirement under Florida law. In 1984, the Florida Legislature amended section 48.193 and appears to have eliminated the connexity requirement. *Id.* at 970. The amended statute applies to all actions which accrued subsequent to the effective date of the statute. The effective date of the statute was April 25, 1984. *Id.* In the case before this court the acts complained of occurred in 1986. Therefore, the amended version of Florida Statute § 48.-193(1)(a) applies, rather than the former version of the statute.

Prior to the statute's amendment in 1984, business conducted by a corporation in Florida could not be imputed to the agents of the corporation in order to bootstrap jurisdiction over agents being sued in their individual capacities. *Excel Handbag Company, Inc. v. Edison Brothers Stores, Inc.*, 428 So.2d 348, 350 (Fla.Dist.Ct.App. 1983).

Under the prior version of § 48.193(1)(a) there would not have existed sufficient connexity between Florida and the individual defendants to permit application of Florida long-arm jurisdiction, thereby making it unnecessary for the court to engage in consideration of federal due process requirements. The result under the new version of the statute is uncertain. Speculation as to the degree of connexity required, if any, under the amended version of § 48.-193(1)(a), would necessarily place this court in the posture of making Florida law. The court will instead proceed directly to a consideration of federal due process requirements. *See Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184, 185 n. 2 (5th Cir.1978) (omission of analysis under state long-arm statute appropriate when state law is uncertain and case may be "disposed of readily on the constitutional ground, on

the authority of existing decisions, [and] without creating any new constitutional law.").

## II. MINIMUM CONTACTS

■ Once it is determined that a particular provision of state long-arm jurisdiction applies, the court must engage in further inquiry to determine whether the imposition of jurisdiction over the person of the defendant(s) is offensive to the Due Process Clause of the United States Constitution.

For the reasons set forth above, the court has determined that, under Florida law, personal jurisdiction over the defendants, Feyh and Cann, may not be premised on subsection 48.193(1)(b) (commission of a tortious act in Florida). Additionally, as to any of the three defendants, jurisdiction may not be based on subsection 48.193(1)(g) (breaching a contract by failing to perform an act required by the contract to be performed in Florida). Having so found, it is thus unnecessary for the court to engage in federal due process analysis as to any of the defendants, with respect to the subsection regarding contracts. Further, the court need not engage in federal due process analysis as to the defendants, Feyh and Cann, under the subsection of the Florida long-arm statute which deals with tortious acts.

However, having found that the plaintiff has stated sufficient allegations under the tortious act subsection as to defendant Fugitt, this court must now measure defendant Fugitt's contacts against the requirements of the Due Process Clause. Additionally, due to the uncertainty regarding the degree of connexity required by the new Florida long-arm statute, in so far as section 48.193(1)(a) (the doing business provision), is concerned, the court will consider the requirements of due process in determining whether there exists *in personam* jurisdiction as to any of the defendants under the doing business subsection of the Florida long-arm statute.

The United States Supreme Court has recently reviewed the application of the Due Process Clause to state long-arm jurisdiction. In *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985), the Court repeated the rule earlier set forth in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), that "the Due Process Clause protects an individual's liberty interest in not being subject to the binding judgment of a forum with which he has established no meaningful 'contacts, ties or relations.'" *Burger King,* 471 U.S. at 471–72, 105 S.Ct. at 2181–82 (quoting *International Shoe,* 326 U.S. at 319, 66 S.Ct. at 159.). The Court went on to state that "the constitutional touchstone remains whether the defendant [has] purposefully established 'minimum contacts' in the forum state." *Burger King,* 471 U.S. 474, 105 S.Ct. at 2183 (citations omitted). Purpose is measured not by a forseeability test, but by whether " 'the defendant's conduct and connections with the forum state are such that he should reasonably anticipate being haled into court there.'" *Id.* 105 S.Ct. at 2183 (citations omitted).

It is the defendant's contacts and not the "unilateral activity" of the plaintiff that bear significance. *Id.* (citations omitted). There must be " 'some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)).

If it is determined that the defendant has "purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* 105 S.Ct. at 2184 (quoting *International Shoe,* 326 U.S. at 320, 66 S.Ct. at 160). These additional factors include:

'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in ob-

taining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'

*Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)).

In support of the plaintiff's claim that the defendants were engaged in a business venture in Florida and that defendant Fugitt committed a tortious act in Florida, the plaintiff offers the following: the plaintiff alleges that the defendants contacted the plaintiff in Florida by telephone from Missouri and solicited the plaintiff's investment in the corporation, (Plaintiff's Complaint at ¶ 5); that although the plaintiff made six trips to Missouri, "substantially all of the negotiations for the plaintiff's investment in Corporate Coachworks occurred over the telephone on approximately 30 different occasions," (Plaintiff's Memorandum in Opposition at 2); that the defendants were "in regular communication with First American [sic] & Trust Company in Palm Beach County regarding a letter of credit that the defendants had requested ...;" and that there were "daily telephone conversations between the [d]efendants' attorney ..." in Missouri and the plaintiff's attorney in Florida. *Id.*

The plaintiff further alleges in his supporting supplemental affidavit that the corporation engaged in business in Florida and derived $500,000.00 in sales from this Florida business. Supplemental Affidavit at 2. The plaintiff states in his supplemental affidavit and in his memorandum that the corporation is closely held and that the plaintiff would have been one of only four shareholders. Plaintiff's Memorandum in Opposition at 11.

It is alleged by the plaintiff that the parties entered into a signed agreement which the parties termed "Memorandum." The Memorandum has been characterized by the plaintiff as a contract. The Memorandum was written and signed by the parties in Missouri at the office of the defendants' attorney. Plaintiff's Supporting Affidavit at 3.

The plaintiff, thus, seeks to invoke long-arm jurisdiction over the individual defendants on the basis of the corporation's activities in Florida, the contacts the individual defendants allegedly established with Florida via various telephone and mail communications, and finally, through specific communications between the plaintiff and the defendant Fugitt. The business the corporation is alleged to have been conducting in Florida, is unrelated to the harm for which the plaintiff is suing.

The court finds, taking the allegations of the plaintiff as true, that the acts of the corporation cannot be automatically imputed to the individual defendants. The mere allegation that the corporation is closely held does not, without more, raise the presumption that the corporation is a sham, so that the acts of the corporation may be imputed to the individual defendants. *Bloom v. A.H. Pond Co., Inc.,* 519 F.Supp. 1162, 1170 (S.D.Fla.1981).

The only basis which remains to support the exercise of *in personam* jurisdiction, therefore, is the actions of the individual defendants, as alleged by the plaintiff. The plaintiff places great emphasis upon the initial telephone call which was allegedly made by the defendants to the plaintiff in Florida, as well the numerous other telephone and mail communications the defendant Fugitt is alleged to have engaged in with the plaintiff.

In accordance with the approach of the Supreme Court in *Burger King,* this court must look to such factors as "prior negotiations, contemplated future consequences, terms of the contract and the parties' actual course of dealing[,] to determine whether [the defendants or any one of them] purposefully established minimum contacts with the forum." *Stuart v. Spademan,* 772 F.2d 1185, 1193 (5th Cir.1985) (relying on *Burger King,* 471 U.S. at 477–80, 105 S.Ct. at 2185–86).

As applied to the case *sub judice,* each of these factors points to Missouri as the proper forum and militates against Florida. The prior negotiations between the parties

**256**

are generally insufficient standing alone to amount to purposeful activity. *Stuart,* 772 F.2d at 1193. The telephone calls between the parties as well as the mailing of financial statements into Florida by the defendants constitute actions in anticipation of a contract. *Id.* Despite the plaintiff's best efforts, Missouri remains the focus of activity between the parties, for Missouri is where the purported contract was signed as well as where the corporation's base of activity was located.

This conclusion is strengthened by the fact that the plaintiff traveled six times to Missouri to negotiate the deal. The meaningful activities between the parties occurred in Missouri. The defendants' actions fall short of that required to establish purposeful contact with Florida such that the defendants would reasonably have anticipated having to defend suit in Florida. "[T]he existence of a contract between the foreign defendant[s] and a resident of the forum state [does not] automatically amount to 'purposeful availment.'" *Sea Lift, Inc. v. Refinadora Costarricense,* 792 F.2d 989, 993 (11th Cir.1986) (citations omitted).

Moreover, even assuming that the defendants had purposefully established minimum contacts with Florida the contacts alleged here fall far short of those required to satisfy the additional consideration of "fair play and substantial justice." *International Shoe,* 326 U.S. at 320, 66 S.Ct. at 160. The burdens on the defendants to defend in a foreign forum are significant and outweigh the convenience to the plaintiff of suing in Florida merely because his residence is here. Additionally, Missouri has a significant interest in redressing wrongs committed within its borders. Here that interest is particularly strong because the contract was allegedly signed in Missouri and concerned a Missouri corporation. Florida's relationship to the defendants is attenuated at best.

In sum, the defendants' activities do not rise to the level necessary to meet the requirements of federal due process and this court is, therefore, without jurisdiction over the persons of the defendants. Accordingly, it is hereby

ORDERED AND ADJUDGED that the motion of the defendants, Ronald E. Feyh, Rick L. Fugitt, and N. Robert Cann, to dismiss the plaintiff's complaint for lack of *in personam* jurisdiction is GRANTED. The plaintiff's complaint stands DISMISSED, without prejudice.