Harry Christian GREEN, Plaintiff,

v.

USF & G CORPORATION,
et al., Defendants.

No. 91–10045–CIV.

United States District Court,
S.D. Florida.

July 23, 1991.

Militana, Militana, Militana & Lumley, P.A., Justin R. Lumley, Tierra Verde, Fla., for plaintiff.

Martin Leonard Steinberg, Holland & Knight, Miami, Fla., for defendants.

## ORDER GRANTING DEFENDANTS HAFETS AND LEBAU'S MOTION TO DISMISS AND TO QUASH SERVICE

JAMES LAWRENCE KING, Chief Judge.

This cause comes before the Court upon motion of defendants Hafets and Lebau to quash service and to dismiss the Complaint for lack of personal jurisdiction, under Rule 12(b)(2) of the Federal Rules of Civil Procedure. Defendants Hafets and Lebau also move for dismissal for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Because it is jurisdictional, this Court must rule on 12(b)(2) motion first. *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990).

## I. FACTS

On May 13, 1991, plaintiff Harry Christian Green filed a complaint against USF & G Corporation, various subsidiaries and officers, and the corporation's attorneys, Richard Hafets and Stephen Lebau (working for the law firm of Piper & Marbury in Baltimore, Maryland). Most of the Counts in the Complaint are breach of contract and related claims arising out of the allegedly wrongful discharge of plaintiff. The sole Count against defendants Hafets and Lebau is Count VIII, alleging slander. Plaintiff alleges that on December 21, 1990, one of the officers of USF & G directed Donald P. Davis, a former employee of a USF & G subsidiary, to call defendant Hafets. When Davis called, defendant Hafets allegedly brought defendant Lebau in on a conference call with Davis. During the course of the conversation, defendants Hafets and Lebau allegedly attempted to solicit from Davis what they allegedly described as "dirty activities" by plaintiff to effect a more convenient settlement of the wrongful discharge claim. Plaintiff also alleges that defendant Hafets initiated a second phone call on December 27 and advised Davis that he had received information that Davis had been hired by plaintiff to follow plaintiff's wife and to wiretap the offices of another USF & G subsidiary. Plaintiff alleges the slanderous statements were published by word of mouth and were intended to mean that plaintiff had committed a crime, an illegal wiretap, and was engaged in other illegal or immoral activities.

On June 18, 1991, defendants Hafets and Lebau filed this motion to dismiss and to quash service, along with a memorandum of law and the affidavits of Hafets and Lebau. Both defendants Hafets and Lebau state that they practice law and reside in Maryland and have no ties to the state of Florida. Neither has an office, agents, or assets in Florida; nor has either been physically present in Florida; nor has either conducted business in Florida.[1] They state

---

1. The affidavit of Richard Militana seems to dispute some of this, stating on belief and information that a member or members of defendants' law firm, Piper & Marbury, has main-

that they were investigating for USF & G possible improprieties by certain officers and employees, one of whom was plaintiff. In his affidavit, defendant Lebau states that he believes he said nothing during the conversation of December 21, except perhaps "hello" on the speaker-phone.

On July 11, 1991, plaintiff filed a memorandum in opposition, as well as the affidavits of Donald P. Davis and plaintiff's counsel Richard Militana. Davis' affidavit in essence verifies plaintiff's allegations concerning the phone calls. Davis refers to the attorneys collectively, never explicitly refuting that defendant Lebau did not speak. The purpose of the Militana affidavit is apparently to inform the Court that it was Piper & Marbury rather than the defendants Hafets and Lebau who were representing USF & G, and that Piper & Marbury may have a member on USF & G's Board of Directors.

Neither party has argued the 12(b)(6) motion in these pleadings.

## II. RULE 12(b)(2) MOTION

Determining whether a court has jurisdiction over the person involves a two-part analysis. First, the court must consider the jurisdictional question under the state long-arm statute, in this case Fla.Stat. § 48.193. Second, the court must determine whether there are sufficient minimum contacts to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Madara*, 916 F.2d at 1514 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

### (A) THE FLORIDA LONG–ARM STATUTE

Since plaintiff alleges that defendants Hafets and Lebau slandered plaintiff, plaintiff asserts that this Court has personal jurisdiction over the defendants pursuant to the Florida long-arm statute because they committed a tort within the state. Defendants' arguments are mainly directed at whether their contacts with the state are substantial enough to warrant the exercise of jurisdiction, apparently unaware that plaintiff is invoking the tort portion of the Florida long-arm statute. The Florida long-arm statute, § 48.193, provides, in pertinent part:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

> .    .    .    .    .

> (b) Committing a tortious act within this state.

■■■ The plaintiff has the burden of sustaining an assertion of personal jurisdiction against a challenge. However, in deciding the motion, the court must consider the pleadings and affidavits in the light most favorable to the plaintiff. When a district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir.1988); *Poston v. American President Lines, Ltd.*, 452 F.Supp. 568, 571 (S.D.Fla.1978). "In ruling on a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint, except insofar as controverted by the defendant's affidavit, must be taken as true." *Black v. Acme Markets, Inc.*, 564 F.2d 681 (5th Cir.1977).[2]

---

tained a seat on the Board of Directors of defendant USF & G, which apparently does have substantial ties to Florida. This Court fails to see the relevance of this with respect to the personal jurisdiction over defendants Hafets and Lebau, especially given that plaintiff is predicating jurisdiction on a tort allegedly committed within Florida.

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the court adopted as binding precedent all decisions of the former Fifth Circuit, including UNIT A, handed down prior to October 1, 1981.

The Florida long-arm statute is to be strictly construed to guarantee compliance with due process requirements. *Cosmopolitan Health Spa v. Health Industries, Inc.*, 362 So.2d 367 (Fla. 4th DCA 1978); *Oriental Imports and Exports, Inc. v. Maduro and Curiel's Bank, N.V.*, 701 F.2d 889 (11th Cir.1983). The reach of the Florida long-arm statute is a question of Florida law, so a federal court is required to construe it as would the Florida Supreme Court. *Madara*, 916 F.2d at 1514. However, federal court construction of state law may be relied upon in the absence of supervening state court interpretations. *Spencer Boat Co. v. Liutermoza*, 498 F.2d 332 (5th Cir.), *reh'g denied*, 503 F.2d 568 (5th Cir.1974).

The question, then, is whether the allegedly slanderous statement that defendant Hafets made from his office in Maryland, with defendant Lebau present on a conference call, to Davis in Florida constitutes a tort committed within the state under Florida law. The cases on the issue of slander, defined as spoken defamatory words, 19 *Fla.Jur.2d* Defamation § 2 (1980), are not entirely clear.

In *Carida v. Holy Cross Hosp., Inc.*, 424 So.2d 849 (Fla. 4th DCA 1982), the court exercised jurisdiction over a nonresident defendant who made allegedly defamatory remarks over the telephone and the publication of the defaming statement occurred in Florida. The court noted that due process was not offended there because there was not simply one isolated conversation in a vacuum; instead, the defendant participated in a series of conversations during which defendant had to know that his allegedly false statements were adversely affecting plaintiff in his professional medical endeavors in Florida. *Id.* at 852.

In *Madara v. Hall*, the district court found that it could exercise jurisdiction over a nonresident defendant in an action for libel, where the published statement was made by telephone in another state and the allegedly false material was circulated within Florida, if consistent with due process. 717 F.Supp. 812 (S.D.Fla.1989), *aff'd in part and vacated in part on other*

*grounds*, 916 F.2d 1510 (11th Cir.1990). There, however, the court found that due process requirements did not permit jurisdiction over the defendant.

Similarly, in *Stepanian v. Addis*, 782 F.2d 902, 903 (11th Cir.1986), the Eleventh Circuit, deciding where the cause of action arose for purposes of statute of limitations, said that although the cases are not clear, where a person informs a news reporter, the tort of libel and slander can occur where the material is circulated.

Finally, § 48.193(1)(b) was held to apply to fraudulent representations which allegedly occurred during telephone conversations between plaintiff, a Florida investor, and defendants, Missouri sellers of stock. *Groome v. Feyh*, 651 F.Supp. 249, 251 (S.D.Fla.1986). However, the court there found that exercise of such jurisdiction did not comport with due process. *Id.* at 256.

Here the statements were never written down and distributed within the state of Florida as they were in the above libel cases. However, it seems reasonable to infer that the slander equivalent of publication, the transmittal of the words to a third party in Florida, brings the action within the reach of the statute. The fact that fraudulent representations uttered over the telephone from Missouri were held to constitute a tort committed within the state of Florida in *Groome* strengthens this inference. 651 F.Supp. at 251. Therefore, this Court finds that the allegedly slanderous remarks constitute a tort committed within the state of Florida.

Before moving to the due process inquiry, however, it is necessary to distinguish between defendants Hafets and Lebau. Lebau states in his affidavit that he did not speak during the first phone call other than to say hello; it is uncontroverted that he had no part in the second phone call. While Davis' affidavit refers to the actors as "they," Davis never expressly says that defendant Lebau made any statement and this Court is not convinced that he did. However, considering the pleadings and the affidavits in the light most favorable to plaintiff, this Court finds that the tort provision of § 48.193 applies to

both defendants. The Court now addresses whether due process requirements permit it to exercise jurisdiction over defendants Hafets and Lebau.

## (B) DUE PROCESS

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1985) (quoting *International Shoe*, 326 U.S. at 319, 66 S.Ct. at 160). The question of whether due process has been complied with itself also involves a two-prong inquiry. First, did defendant establish minimum contacts with Florida? Second, would the exercise of jurisdiction offend traditional notions of fair play and substantial justice? *Madara*, 916 F.2d at 1516. Plaintiff cites as dispositive of the due process issue the Florida Supreme Court case of *Godfrey v. Neumann*, 373 So.2d 920 (Fla.1979), which held that the commission of a tort in Florida by a nonresident is a sufficient "minimum contact" to justify the exercise of personal jurisdiction over the defendant. While that may be true, a Florida Supreme Court case interpreting the United States Constitution is not binding on this Court. Federal law applies to determine whether assertion of jurisdiction over defendant comports with due process. *Poston*, 452 F.Supp. at 571; *see Madara*, 916 F.2d 1510; *Groome*, 651 F.Supp. 249. Furthermore, it would seem to vitiate the two-part approach to jurisdiction to hold that in every case where a tort has occurred in the state, the exercise of jurisdiction comports with due process.

■ To constitute minimum contacts with a state for specific personal jurisdiction, the defendant's actions must provide him with fair warning. *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2181–82. This requirement is satisfied if the defendant purposefully directs activities at Florida and litigation arises out of those activities, *id.*, or the defendant "purposefully avails" himself of the privilege of conducting activities within the forum state. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Additionally, activities must be of such character that the defendant would reasonably anticipate being haled into court in Florida. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2181–82. A defendant may not be haled into a jurisdiction solely as a result of " 'random,' 'fortuitous,' or 'attenuated' " contacts. *Id.* at 486, 105 S.Ct. at 2189; *see World–Wide Volkswagen*, 444 U.S. at 299, 100 S.Ct. at 568. The Supreme Court has emphasized that it is "the actions of the defendant *himself* that must create a 'substantial connection' with the forum...." *Johnston v. Frank E. Basil, Inc.*, 802 F.2d 418, 420 (11th Cir.1986) (citations omitted).

■ In this respect, the only contact which is relevant is the second phone call, which was placed by defendant Hafets alone from his office in Maryland. The first phone call was placed by Davis, not the defendants. The Eleventh Circuit recently held that two telephone calls to Florida during which the defendant allegedly made fraudulent representations did not provide the required minimum contacts with the state. "That the calls originated from Florida rather than from Indiana or Idaho was purely a matter of chance." *Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1034 (11th Cir.1991).

■ As to the call initiated by defendant Hafets, the Southern District of Florida held in *Groome* that the telephone and mail communications from the Missouri defendant fell short of establishing minimum contacts. 651 F.Supp. at 256. Here defendant Hafets' contact with Florida was equally fortuitous and random. This Court finds that the telephone calls do not constitute minimum contacts with Florida for either Hafets or Lebau. However, the Court must turn to whether considerations of fair play and substantial justice permit exercising jurisdiction over defendants Hafets and Lebau. Relevant factors include the burden on the defendant, the

forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interests of the several states in furthering fundamental substantive social policies. *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184–85.

In this case, defendants Hafets and Lebau would be greatly burdened if they were made to travel to Florida to defend against this action. Florida seems to have no special interest in adjudicating this dispute. Furthermore, declining to exercise jurisdiction would not harm plaintiff's interests: he could bring this action against both Hafets and Lebau in Maryland. Finally, the interstate judicial system would not benefit from Florida's adjudication of the action, since it is really unrelated to the other claims in this case and thus no efficiency would result.

### III. RULE 12(b)(6) MOTION

This Court does not reach the Rule 12(b)(6) motion.

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that defendants Hafets and Lebau's motion to quash service and to dismiss is GRANTED. It is further

ORDERED and ADJUDGED that service of process be and hereby is QUASHED as to defendants Hafets and Lebau. It is further

ORDERED and ADJUDGED that the Complaint be and hereby is DISMISSED as to defendants Hafets and Lebau.

DONE and ORDERED.