Janice POMAZI, Kathy Zehr

v.

**HEALTH INDUSTRIES OF AMERICA, INC. d/b/a Edgemont Hospital, Hope Institute a.k.a. Behavior Health Center, Financial Billing Systems, Cathy Quinn, William Hoban.**

Civ. No. 3:93CV00859 (PCD).

United States District Court,
D. Connecticut.

Nov. 14, 1994.

Nancy Burton, Redding Ridge, CT, for plaintiffs Janice Pomazi, Kathy Zehr.

Gerald S. Sack, Nicole D. Dorman, Sack, Spector & Barrett, West Hartford, CT, for defendants Health Industries of America, Inc. dba Edgemont Hosp., Kathy Quinn, William Hoberman.

## RULING ON MOTION TO DISMISS

DORSEY, Chief Judge.

Plaintiffs seek damages under § 43(a) of the Lanham Act 15 U.S.C. § 1125 and the Connecticut Unfair Trade Practices Act (CUTPA), Conn.Gen.Stat. § 42–110a et seq., and for breach of contract, intentional infliction of emotional distress, and fraud. Defendants move to dismiss for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2), and to dismiss, Fed.R.Civ.P. 12(b)(6), on the ground that plaintiffs fail to state a claim upon which relief can be granted.

## BACKGROUND

In September, 1992, plaintiff Pomazi entered into the Hope Institute eating disorder treatment program ("Hope"). At that time, the program operated out of Edgemont Hospital in Los Angeles, CA. Plaintiff alleges that the program offered far less than what its solicitations had described. Further, the program was allegedly located on the same floor as some of Edgemont's psychiatric patients with minimal separation.

Plaintiff alleges that while she attended the program, defendants Quinn and Hoban placed malicious phone calls to plaintiff's family and prevented her from using the telephone. Plaintiff allegedly abandoned the program after an incident involving one of the psychiatric patients. Edgemont billed plaintiff's insurer in excess of $75,000. Plaintiff alleges that she was billed for services that the program never performed.

## DISCUSSION

Personal jurisdiction over an out-of-state defendant in a diversity case depends first upon whether the federal district court has

jurisdiction under the forum state's long-arm statute. If it does, the second question is whether the exercise of personal jurisdiction would violate the Due Process clause of the United States Constitution. *See Air Kaman, Inc. v. Penn–Aire Aviation, Inc.,* 542 F.Supp. 2, 3 (D.Conn.1981).

■ In ruling on defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff "need only show a prima facie case of jurisdiction, such showing being sufficient regardless of any controverting presentation by the party moving to dismiss." *David v. Weitzman,* 677 F.Supp. 95, 98 (D.Conn.1987) (citations omitted).

### A) *Plaintiff Kathy Zehr*

■ The Connecticut long-arm statutes do not confer jurisdiction over actions committed by a nonresident party against another nonresident. *See* Conn.Gen.Stat. § 33–411(c), § 52–59b(a). As plaintiff Kathy Zehr is a resident of New York state and defendants are residents of California, Zehr's claims are dismissed.

### B) *Health Industries of America D/B/A Edgemont Hospital*

■ Personal jurisdiction over corporations is governed by Conn.Gen.Stat. § 33–411(c).[1] Plaintiff alleges that Edgemont entered into a contract in Connecticut, solicited business in Connecticut, and fraudulently induced a contract in Connecticut thereby acceding to jurisdiction in Connecticut. (Plaintiff's Objection to Motion to Dismiss (filed July 12, 1993) ("Objection") at 5.)

Plaintiff's argument for in personam jurisdiction over Edgemont presumes that Hope and Edgemont are the same corporate entity.[2] Plaintiff supports this presumption with

allegations that at the time of the alleged incidents, Hope operated within Edgemont Hospital. (Aff. of Janice Pomazi, Objection ("Pomazi Aff.") ¶ 25.) Plaintiff also submits that Joe Hunt was a staff member of both the Hope program and Edgemont. (Objection, Exhibit B.) Resting on this presumption, plaintiff asserts that any contract, solicitation, or tortious activity in Connecticut by the Hope program confers personal jurisdiction over Edgemont.

This presumption is not accurate. The Hope program was removed from Edgemont soon after the alleged incidents. (Pomazi Aff. ¶ 32.) When it was operating out of Edgemont, Hope was described as "housed within" the hospital. (Objection, Exhibit A) A stronger relationship between the two has not been established. Because Hope and Edgemont are separate entities, due process prohibits a state from exercising personal jurisdiction over one for the actions of the other. *See International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *See also Asahi Metal Industry Co. v. Superior Court of California, Solano County,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Due Process insures that "a defendant will not be haled into a jurisdiction solely as a result of ... the 'unilateral activity of another party or a third person ...'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *Helicopteros,* 466 U.S. at 417, 104 S.Ct. at 1873 (1984)).

#### 1) *Contract*

■ Plaintiff argues that Edgemont falls under § 33–411(c)(1) because Edgemont entered into a contract with her in Connecticut.

1. § 33–411(c) provides in pertinent part:
   Every foreign corporation shall be subject to suit in this state, by a resident of this state ... whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; or (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solic-

ited business, whether the orders or offers relating thereto were accepted within or without the state; ... or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

2. The presumption is exemplified by plaintiff's reference to the to entities as "Hope/Edgemont" throughout her Objection to Motion to Dismiss. (Objection, at 4–6, 11.)

To support this argument, plaintiff's affidavit evidences her acceptance of the telephone offer to enter the program while in Connecticut and that Edgemont alone billed her insurer. (Pomazi Aff. ¶¶ 20, 33.)

A contract entered into over the telephone is created in the state in which the party accepts. *See, e.g., U.S. v. Bushwick Mills,* 165 F.2d 198, 202 (2d Cir.1947). However, Pomazi did not make her contract with Edgemont. She states that she "accepted the telephone offer from *Hope personnel* to attend the program." (Pomazi Aff. ¶ 20 (emphasis added)) She makes no mention of entering a contract with Edgemont personnel prior to her arrival in California—in fact, she makes no mention of *any* contact with Edgemont personnel prior to her arrival in California. It appears that Pomazi had no idea that the Hope program was located within Edgemont prior to arriving there. (Pomazi Aff. ¶ 21.) Unable to show contact with Edgemont personnel before reaching California, plaintiff fails to make a prima facie showing that she entered into a contract with Edgemont in Connecticut.

■ Plaintiff argues that Edgemont's $75,-000 bill to her insurer proves a contract between her and Edgemont. Section 33–411(c)(1) does not pertain merely to a foreign corporation's contract with a citizen of Connecticut—the statute requires that the contract be "made in this state." There is no evidence that Edgemont and Pomazi made a contract in Connecticut. Therefore, § 33–411(c)(1) does not apply.

### 2) *Business Solicited*

■ Plaintiff also argues that § 33–411(c)(2) applies because Edgemont repeatedly solicited business in Connecticut by mail or otherwise. Pomazi furnishes evidence of Hope's director's national television appearance and nationwide lecture tour as well as its mailings.

Plaintiff has not established that Edgemont solicited business in Connecticut. The only mention of Edgemont in any of the evidence is Hope's address (the same as Edgemont's) and Hope's description of itself as "housed in a fully accredited J.C.A.H. hospital [Edgemont]." (Objection, Ex. A.) To the contrary, defendant's affidavit establishes that Edgemont never "advertised services or programs in any publication or medium reasonably expected to circulate in Connecticut." (Aff. of Joe Hunt, Defendant's Memorandum of Law in Support of Defendants' Motion to Dismiss (filed June 4, 1993) ("Hunt Aff.") ¶ 11.)

Given the absence of any evidence that Edgemont solicited business in Connecticut, the Court cannot exercise in personam jurisdiction over Edgemont under § 33–411(c)(2).

### 3) *Tortious Activity*

■ Plaintiff further argues that Edgemont falls under § 33–411(c)(4) because it engaged in fraudulent inducement to contract and charged Pomazi for services never performed. Plaintiff supports this argument with evidence of the contrast between what Hope purported to offer potential clients (through the mail and over telephone) and the reality of the program.

Plaintiff has failed to provide any evidence that Edgemont fraudulently induced her to contract. Plaintiff again presumes that Hope's solicitations (fraudulent or otherwise) establish in personam jurisdiction over Edgemont. There is no evidence that Edgemont engaged in a fraudulent inducement to contract in Connecticut and therefore § 33–411(c)(4) does not apply.

Defendant Edgemont's motion to dismiss for lack of personal jurisdiction is granted.

### C. *Cathy Quinn and William Hoban*

■ Jurisdiction over individual nonresident defendants is governed by Conn.Gen. Stat. § 52–59b(a),[3] which permits assertion of

---

**3.** § 52–59b(a) provides in pertinent part:
As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual ... who in person or through an agent: ... (2) commits a tortious act within

the state ... or (3) commits a tortious act outside the state causing injury to person or property within state ... if he (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or con-

jurisdiction if such a person commits a tortious act within the state. Plaintiff argues that by placing phone calls to Pomazi's family in Connecticut, defendants Quinn and Hoban committed tortious acts within Connecticut and are thereby subject to Connecticut's long arm statute.

A malicious phone call into the forum state is insufficient contact to support a suit in that state against a nonresident. *Fox v. Boucher*, 794 F.2d 34 (2d Cir.1986); *See also, Mann v. Tom James Co.*, 802 F.Supp. 1293 (E.D.Pa. 1992); *Green v. USF & G Corp.*, 772 F.Supp. 1258 (S.D.Fla.1991). There must be "some act by which the defendant purposely avails itself of the privilege of conducting activities within that forum state...." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). That is not satisfied by a malicious phone call into the forum state. *Fox*, 794 F.2d at 37.

Plaintiff cites no contact other than the alleged malicious phone calls to Pomazi's family in Connecticut. This is insufficient to establish in personam jurisdiction over defendants. Therefore, Quinn's and Hoban's motion to dismiss for lack of personal jurisdiction is granted.

*CONCLUSION*

Defendants' motion to dismiss for lack of personal jurisdiction (doc. # 8) is granted. Accordingly, the motion to consolidate with 3:93cv1900 (JAC) (doc. # 20), the motion to terminate limited discovery (doc. # 24) and the motion for determination of jurisdictional issues (doc. # 24) are denied as moot.

SO ORDERED.

sumed or services rendered, in this state, or (B) expects or should reasonably expect the act to have consequences in the state and derives

substantial revenue from interstate or international commerce....