977 So.2d 639 (2008)
COLUMBIA/JFK MEDICAL CENTER LIMITED, etc., Appellant,
v.
Sam SANGOUNCHITTE and Matilda Sangounchitte, Appellees.
Nos. 4D07-1068, 4D04-2034.
District Court of Appeal of Florida, Fourth District.
February 13, 2008.
*640 Jennifer S. Carroll of the Law Offices of Jennifer S. Carroll, P.A., Palm Beach Gardens; Sylvia H. Walbolt and Stephanie Zimmerman of Carlton Fields, P.A., Tampa and Maureen E. Mahoney of Latham & Watkins, LLP, Washington, DC, for appellant.
Julie H. Littky-Rubin of Lytal, Reiter, Clark, Fountain & Williams, LLP, West Palm Beach, for appellees.
KLEIN, J.
Plaintiffs recovered a large verdict against the appellant hospital on the theory that the hospital negligently credentialed a neurosurgeon who should not have been allowed by the hospital to perform an operation that went terribly wrong. We reject the hospital's argument that there was insufficient evidence to support negligent credentialing, but reverse the award to Mrs. Sangounchitte for lost services as well as the award of attorney's fees.
The neurosurgeon who operated was Dr. Jacques Farkas. Dr. Farkas had diagnosed Mr. Sangounchitte (plaintiff) with a very serious and complicated cervical spine problem for which surgery was necessary in order to stabilize the neck. The procedure he performed consisted of an anterior fusion, followed three days later by posterior surgery in Which Dr. Farkas inserted steel "Luque" rods which were attached to the spine with wires. Following the surgery the Luque rods migrated from the cervical spine up into plaintiffs cerebellar cavity, causing brain damage and spinal cord injury.
Dr. Farkas, who was not a defendant in this case, testified that he was aware that he had used these rods "off label" on this plaintiff, contrary to the manufacturer's warning not to use the rods in the cervical spine. He also knew that the FDA had refused to approve these rods for cervical use, and that the rods could migrate into the brain if used in the cervical spine. This was the first time Dr. Farkas had operated using these rods in the cervical spine.
It was alleged in this lawsuit that the hospital had negligently credentialed Dr. Farkas, and following a trial the jury found against the hospital, awarding plaintiff $8,511,582, and his wife $2,925,000.
The primary issues raised by the hospital on liability involve the qualifications and testimony of plaintiffs expert on negligent credentialing, Arthur Shorr. Shorr has an MBA in hospital and healthcare *641 administration from George Washington University and is board certified in healthcare administration by the American College of Healthcare Executives. He is currently a faculty member of George Washington University's graduate program in healthcare administration in the School of Public Health. He was the chief operating officer at Cedars Sinai Hospital in Los Angeles during the 1980s. He is currently a consultant to hospitals and spends about one-third of his time as an expert witness in cases involving hospital administration.
The hospital argues that Shorr was not qualified to testify under section 766.102(7), Florida Statutes, which provides:
. . . [I]n a medical negligence action against a hospital, a health care facility, or medical facility, a person may give expert testimony on the appropriate standard of care as to administrative and other nonclinical issues if the person has substantial knowledge, by virtue of his or her training and experience, concerning the standard of care among hospitals, health care facilities, or medical facilities of the same type as the hospital, health care facility, or medical facility whose acts or omissions are the subject of the testimony and which are located in the same or similar communities at the time of the alleged act giving rise to the cause of action.
The hospital argues primarily that Shorr was not competent to testify as an expert on credentialing issues because he had not worked in a hospital for twenty-three years, had not consulted on credentialing for five years, and had no experience in hospital administration in Florida.
As to the last point, that Shorr had no experience as a hospital administrator in Florida, Florida hospitals are governed by the Joint Commission on Hospital Accreditation Standards, as are hospitals all over the country. Carida v. Holy Cross Hosp., 424 So.2d 849 (Fla. 4th DCA 1982) (Joint Commission on Accreditation Standards established the procedural requirements to be used by all hospitals); Palm Springs Gen. Hosp. v. Valdes, So.2d 1151 (Fla. 3d DCA 2001). In addition, Shorr has been accepted by the courts as an expert in credentialing cases in Florida as well as in other jurisdictions.
Whether an expert witness is qualified is a determination within the discretion of a trial court, McBean v. State, 688 So.2d 383 (Fla. 4th DCA 1997). The hospital has failed to demonstrate an abuse of discretion based on Shorr's qualifications.
As to the substance of the claim, Shorr testified that the hospital's bylaws met the community standards for credentialing. When a doctor first applies for privileges, the application contains a list of specific procedures that the doctor seeks privileges for, as well as space for other procedures not listed. The medical evaluation committee reviews both the doctor's training and competence and makes a recommendation which goes to the board of trustees. Thereafter, every two years each doctor must be recredentialed for each procedure he is seeking privileges for. When recredentialing every two years, the hospital can require reeducation or withdraw the privilege.
Shorr testified that, based on Dr. Farkas's testimony, it was apparent that he had never been required to demonstrate proficiency in any of the procedures he performed. Dr. Farkas had never demonstrated that he was competent to perform posterior cervical surgery, let alone such surgery using rod insertion. It was his opinion that Dr. Farkas was not even eligible to request the privilege to perform the procedure. He noted that Dr. Farkas, by *642 his own admission, was performing the procedure for the first time on the plaintiff and that the hospital had, in effect, simply given Dr. Farkas privileges which were unrestricted, in violation of its own regulations.
The hospital argues that the plaintiff failed to prove that Dr. Farkas was incompetent to perform posterior cervical fusion surgery with instrumentation in general, but it ignores the specific Luque rod problem. Dr. Farkas was using these rods "off label," contrary to the manufacturer's warning, and he was using these rods for the first time.
Plaintiff presented as an expert a neurosurgeon who testified that any properly credentialed neurosurgeon would have known that Luque rods cannot be used in the cervical spine due to the high probability that they will migrate into the brain. That testimony, coupled with Dr. Farkas's testimony, and Shorr's testimony that the hospital had been negligent in failing to follow its credentialing regulations in regard to this procedure, was sufficient for a jury to have found that, but for the negligent credentialing, Dr. Farkas would not have been permitted to do this operation. Horowitz v. Plantation Gen. Hosp. Ltd. P'ship, 959 So.2d 176, 180 (Fla.2007) (hospital can be responsible for the negligence of an independent physician when it has failed to exercise due care in the selection and retention of that physician on its staff).
The hospital does have a meritorious claim as to one portion of the award to plaintiffs wife on her derivative claim. The jury itemized that claim between tangible and intangible damages, and as for the tangible damages, awarded her $225,000 for past lost services and $500,000 for future lost services. The only evidence supporting the amounts awarded for lost services was testimony by plaintiffs wife that plaintiff could no longer do household chores and yard work. A neighbor testified he was occasionally paid to help with the chores but there was no testimony as to the amount he was paid, nor was there any expert testimony as to the value of the services plaintiff can no longer provide. The lack of evidence to support the amount awarded for loss of services makes the award excessive, and we accordingly reverse that portion of the award for a new trial. White Const. Co. v. Dupont, 430 So.2d 915 (Fla. 1st DCA. 1983) (reversing for a new trial because of no relevant evidence substantiating the reasonable value of husband's services), Rumsey v. Manning, 335 So.2d 25 (Fla. 2d DCA 1976).
The hospital also argues that the trial court erred in awarding attorney's fees under section 766.209, Florida Statutes, which provides for voluntary binding arbitration, and the recovery of attorney's fees by claimant where a defendant refuses a claimant's offer to arbitrate and the claimant prevails at trial.
Section 766.207(2) requires that the claimant serve a request for voluntary binding arbitration within ninety days after service of claimant's notice of intent to initiate litigation. It is undisputed in this case that plaintiff mailed the notice of intent to initiate litigation on September 4, and mailed the offer to arbitrate on December 4, which was the ninety-first day. Plaintiffs only argument to support the award of fees is to the effect that, even though the statute uses the word "service," we should construe that to mean receipt by the defendant.
Service, as we know from rule 1.080(b), is "complete upon mailing." And it is obvious that the legislature understands the difference between service and receipt because in the very same statute the legislature used the word "receipt" to start the *643 thirty-day period for accepting the offer of voluntary arbitration. § 766.207(3). The trial court accordingly erred in awarding attorney's fees, because the offer to arbitrate was not timely. Willis Shaw Express, Inc. v. Hilyer Sod, Inc., 849 So.2d 276 (Fla.2003) (statutes awarding attorney's fees, which are in derogation of the common law, must be strictly construed); Schussel v. Ladd Hairdressers, Inc., 736 So.2d 776 (Fla. 4th DCA 1999) (affirming denial of attorney's fees under offer of judgment statute for failure to make offer within strict time requirements).
We have considered the other issues raised by the hospital and find them to be without merit. We accordingly affirm the judgment based on the jury verdict except for the award of $725,000 for lost services, which we remand for a new trial, and we reverse the award of attorney's fees.
FARMER and GROSS, JJ., concur.